IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLES WILLIAMS, | : | |
| Plaintiff, | : | Civil No. 04-831 (RBK) |
| v. | : | OPINION |
| TEMPLE UNIVERSITY, TEMPLE UNIVERSITY BOARD OF TRUSTEES, TEMPLE UNIVERSITY POLICE DEPARTMENT, et al., | : | FILED JUN 2 1 2011 MICHAEL E. KUNZ, Clerk By_____Dep. Clerk |
| Defendants. | : | |

**KUGLER**, United States District Judge:

This matter arises out of the allegedly unlawful arrest of Plaintiff Charles Williams by Temple University police officers. Presently before the Court is the Motion for Summary Judgment filed by Defendants Temple University, Temple University Board of Trustees, Temple University Police Department (collectively "the Temple Defendants"), and Officer Leacock and Officer Szeles. For the reasons discussed below, the motion is **DENIED** in part and **GRANTED** in part.

I.   **BACKGROUND**

   A. **Defendants' Version of April 10, 2003**

   On April 10, 2003, a female approached Officer Szeles near the Draught Horse Pub (the "Pub") and told him that a man offered her three bags of cocaine in exchange for sexual favors. The female then pointed to Plaintiff and informed Officer Szeles that Plaintiff was the individual who offered her the cocaine. As a result of that tip, Officer Szeles approached Plaintiff, and told

1

him that an informant claimed that Plaintiff offered her drugs. Officer Szeles then asked Plaintiff to step outside so that he could speak to him privately. However, when Officer Szeles asked Plaintiff to step outside, Plaintiff walked away from him towards the rear of the bar. After heading towards the rear of the bar, Plaintiff proceeded towards the front of the Pub and then outside. According to Officer Szeles, when Plaintiff stepped outside, he took his hands out of his pockets and dropped a plastic bag onto the ground that contained what appeared to be a narcotic. Officer Szeles then handcuffed Plaintiff and transported him to the Temple University Police Department Headquarters.

## B. Plaintiff's Version of April 10, 2003

According to Plaintiff, Officer Szeles approached him at the Pub, blocked his path, and questioned him. Officer Szeles explained that a woman informed him that Plaintiff tried to sell her drugs. At some point during Officer Szeles's conversation with Plaintiff, he made racially derogatory remarks to Plaintiff. Eventually, Officer Szeles escorted Plaintiff to a vestibule area in the Pub and ordered Plaintiff to empty his pockets. Plaintiff complied. Thereafter, Officer Szeles ordered Plaintiff to exit the Pub for further questioning. After Plaintiff exited the Pub, Officer Szeles ordered him to empty his pockets a second time. After Plaintiff emptied his pockets a second time, an officer located near the entrance to the Pub told Officer Szeles that he found a packet of drugs near the entrance to the pub. Officer Szeles then searched and handcuffed Plaintiff and transported him to Temple University's Police Headquarters. Plaintiff claims that he was humiliated, harassed, and interrogated at the police headquarters.

## C. The Suppression Hearing

On July 24, 2003, Plaintiff, who had been charged with knowing possession of a controlled substance in state court, moved to suppress all physical evidence against him. At the

2

suppression hearing, Officer Szeles testified that a woman approached him and told him that Plaintiff offered her cocaine in exchange for sexual favors. Officer Szeles testified that he approached Plaintiff in the bar and asked him to step outside. According to Officer Szeles, either as soon as he stepped outside the bar or right before he reached the exit, Plaintiff pulled his hands out of his pockets and dropped a bag of illegal drugs. Officer Szeles then arrested Plaintiff. Plaintiff argued that the police lacked reasonable suspicion or probable cause to stop and search him. The presiding judge granted Plaintiff's motion, noting that Officer Szeles lacked reasonable suspicion when he ordered Plaintiff to exit the bar for questioning. Specifically, the judge stated: "Once [the arresting officer] decides to take [Plaintiff] from inside the bar to outside the bar, he needs probable cause for that. That's a seizure. And we don't even have reasonable suspicion at this point, because we have got an uncrediable [sic], unreliable witness that points him out." (Pl.'s Br. Ex. 4 Prelim. Hearing Tr. 13:10-16, July 24, 2003).

### D. Procedural History

On January 15, 2004, Plaintiff filed the Complaint. The Complaint alleges the following claims under 42 U.S.C. § 1983: unlawful arrest in violation of the Fourth Amendment; illegal search and seizure in violation of the Fourth Amendment; racial discrimination in violation of the Twenty-Sixth Amendment; denial of due process in violation of the Fourteenth Amendment; and cruel and unusual punishment in violation of the Eighth Amendment. In addition, the Complaint alleges the following claims under Pennsylvania law: malicious prosecution; conduct unbecoming of an officer; official oppression; harassment, disorderly conduct; obstruction of justice; abuse of power; ethnic intimidation; falsifying reports; perjury; deliberate indifference; gross negligence; breach of contract; assault; battery; "defamation of reputation;" and libel. (Compl. at 1).

3

On June 12, 2008, Plaintiff moved for summary judgment. (Doc. No. 45). Plaintiff argued that Defendants unlawfully arrested him for a misdemeanor without probable cause, and that Defendants lacked probable cause to search him. (Id. at 6). The Court denied Plaintiff's motion, determining that a reasonable jury could find that Officer Szeles had probable cause to arrest Plaintiff. (Doc. No. 52, at 6-7).

Defendants now seek summary judgment, arguing that they had reasonable suspicion to conduct a Terry stop, and probable cause to arrest Plaintiff on April 10, 2003. The parties submitted their respective briefs and the motion is ripe for review.

## II. STANDARD

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A genuine issue of material fact exists only if the evidence is such that a reasonable jury could find for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When the Court weighs the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996). The moving party may satisfy its burden either by "produc[ing] evidence showing the absence of a genuine issue of material fact" or by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Once the moving party satisfies this initial burden, the nonmoving party "must . . . set out specific facts showing a genuine issue for trial." Ancora Psychiatric Hosp. v. Sec'y of U.S. Dep't of Health and Human Servs., No. 10-2016, 2011 WL 547733, at *3 (3d Cir. Feb. 17, 2011) (quoting Fed. R. Civ. P. 56(e)(2)). To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushida Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Furthermore, "[w]hen opposing summary judgment, the nonmovant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'" Corliss v. Varner, 247 F. App'x 353, 354 (3d Cir. 2007) (quoting Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co., 311 F.3d 226, 233 (3d Cir. 2002)).

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. Credibility determinations are the province of the factfinder, not the district court. BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

## III. DISCUSSION

### A. Whether Officer Szeles's Investigatory Stop was Lawful[1]

Plaintiff claims that the individual officers named in this lawsuit conducted an unlawful search and seizure in violation of the Fourth Amendment to the U.S. Constitution. Defendants

---

[1] The Court notes that the doctrine of collateral estoppel does not bar Officer Szeles from asserting that he had reasonable suspicion to conduct an investigatory stop, and probable cause to arrest Plaintiff. (See Doc. No. 52, at 6).

5

claim that because the informant's tip was reliable, Officer Szeles was justified in conducting an investigatory stop to determine whether Plaintiff possessed an illegal narcotic.

The Fourth Amendment of the U.S. Constitution prohibits "unreasonable searches and seizures . . . ." U.S. Const. amend. IV. To establish an unlawful search and seizure under the Fourth Amendment, a plaintiff must show that the defendant's actions: (1) constituted a "search" or "seizure" within the meaning of the Fourth Amendment, and (2) were "unreasonable" in light of the surrounding circumstances. See Browner v. Cnty. of Inyo, 489 U.S. 593, 595-600 (1989) (affirming two-fold analysis). With respect to the first step in the Fourth Amendment analysis, not every encounter between police and the public is a seizure. United States v. Crandell, 554 F.3d 79, 84 (3d Cir. 2009). Indeed, the Supreme Court has held that a "seizure does not occur simply because a police officer approaches an individual and asks a few questions." Florida v. Bostick, 501 U.S. 429, 434 (1991). Police may pose questions, ask for identification, and even request to search, provided they do not obtain consent through "coercive means." United States v. Drayton, 536 U.S. 194, 201 (2002). Where a person has the ability to "engage in or terminate the encounter," it is "consensual" and does not implicate the Fourth Amendment. Crandell, 554 F.3d at 84 (citing United States v. Wilson, 413 F.3d 382, 386-87 (3d Cir. 2005)). A consensual encounter does not require reasonable suspicion. Id. (citing United States v. Kim, 27 F.3d 947, 950 (3d Cir. 1994)).

Under the Fourth Amendment, a seizure only occurs "when [a police officer], by means of physical force or show of authority, has in some way restrained the liberty of a citizen." Terry v. Ohio, 392 U.S. 1, 19-20 n.16 (1968). The "show of authority" test "is an objective one: Not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person" in light of all the

surrounding circumstances. California v. Hodari D., 499 U.S. 621, 628 (1991).

Here, the parties do not dispute that Officer Szeles and an unidentified officer seized Plaintiff when they asked him questions in the bar and then directed him to exit the bar for further questioning. However, Defendants argue that the informant's tip justified a subsequent investigatory stop.

The Supreme Court has held that a warrantless seizure of a person for purposes of a brief investigatory detention (a/k/a "a Terry stop") is reasonable absent a warrant, provided the officer had "a reasonable, articulable suspicion that criminal activity is afoot." Illinois v. Wardlow, 528 U.S. 119, 123 (2000). Reasonable suspicion is an objective standard requiring "particularized justification." See Crandell, 554 F.3d at 84 (citing United States v. Mendenhall, 446 U.S. 544, 551 (1980)). "'Reasonable suspicion [required for a Terry stop] is a less demanding standard than probable cause [necessary for an arrest] and requires a showing considerably less than preponderance of the evidence . . . . [R]easonable suspicion can arise from information that is less reliable than that required to show probable cause.'" Id. (quoting United States v. Valentine, 232 F.3d 350, 353 (3d Cir. 2000)). At bottom, reasonable suspicion is a totality of the circumstances test. See United States v. Johnson, 592 F.3d 442, 448-49 (3d Cir. 2010).

Where, as here, the government "relies upon a tip from an unidentified informant as the basis for a reasonable suspicion, assessing the reasonableness of a Terry stop becomes more intricate." United States v. Torres, 534 F.3d 207, 210 (3d Cir. 2008). The informant's "veracity," "reliability," and "basis of knowledge" are relevant to the district court's determination concerning the value of the informant's report. Alabama v. White, 496 U.S. 325, 328 (1990). "The honesty of the [informant], the reliability of his information, and the basis of his knowledge are 'closely intertwined issues that may usefully illuminate the commonsense,

practical question' of whether there is a reasonable suspicion to support a Terry stop." Torres, 534 F.3d at 210-11 (quoting Illinois v. Gates, 462 U.S. 213, 230 (1983)). The Third Circuit provided the following five factors to help district courts determine whether a tip is reliable:

(1) The tip information was relayed from the informant to the officer in a face-to-face interaction such that the officer had an opportunity to appraise the witness's credibility through observation.

(2) The person providing the tip can be held responsible if her allegations turn out to be fabricated.

(3) The content of the tip is not information that would be available to any observer . . . .

(4) The person providing the information has recently witnessed the alleged criminal activity.

(5) The tip predicts what will follow, as this provides police the means to test the informant's knowledge or credibility.

Id. at 211 (citing United States v. Brown, 448 F.3d 239, 249-50 (3d Cir. 2006)).

Based upon the evidence in the record, the tip Officer Szeles received was reliable, and provided him with a reasonable suspicion that Plaintiff possessed illegal narcotics. First, the informant relayed the information to Officer Szeles face-to-face. The informant provided Officer Szeles with a detailed account of the specific narcotics Plaintiff allegedly possessed as well as Plaintiff's attempt to exchange the drugs for sexual favors. Second, Officer Szeles gathered personal information from the informant to ensure he could contact her if the information turned out to be fabricated. Third, because the informant claimed that Plaintiff specifically offered her drugs for sex, the information she provided "is not information that would be available to any observer." Torres, 534 F.3d at 211. Fourth, the informant relayed the information to Officer Szeles shortly after she received the offer from Plaintiff. Finally, the tip predicted that Plaintiff possessed cocaine, and the informant provided Officer Szeles with the

means to test her credibility by identifying Plaintiff. Therefore, applying the Torres factors, the Court finds that the informant's tip contained sufficient indicia of reliability. Accordingly, Officer Szeles's Terry stop was constitutionally sound. See United States v. Noble, 326 F. App'x 125, 128 (3d Cir. 2009) (finding face-to-face tip from defendant's girlfriend contained sufficient indicia of reliability when informant provided officer with detailed information concerning defendant's phone, drugs, and gun, and gave officer detailed descriptions of defendant's cars).

## B. Whether Officer Szeles Had Probable Cause to Arrest Plaintiff

Plaintiff claims that the individual officers named in this lawsuit arrested him without probable cause. Defendant argues that Officer Szeles developed probable cause when "Plaintiff[] . . . drop[ped] a package of cocaine when he took his hands out of his pockets . . . ." (Defs.' Br. at 8).

It is well-established in the Third Circuit that an arrest without probable cause is a Fourth Amendment violation actionable under § 1983. See Walmsley v. City of Phila., 872 F.2d 546, 551 (3d Cir. 1989) (citations omitted). To state a Fourth Amendment claim for false arrest, a plaintiff must allege two elements: (1) that there was an arrest; and (2) that the arrest was made without probable cause. See Dowling v. City of Phila., 855 F.2d 136, 141 (3d Cir. 1988). "Probable cause . . . requires more than mere suspicion; however, it does not require that the officer have evidence to prove guilt beyond a reasonable doubt." Orsatti v. New Jersey State Police, 71 F.3d 480, 482-83 (3d Cir. 1995). Rather, "[p]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Id. at 483. Generally, the existence of probable cause is a factual issue.

9

Groman v. Twp. of Manalapan, 47 F.3d 628, 635 (3d Cir. 1995) (citation omitted).

Summary judgment is inappropriate because a reasonable jury may conclude that Plaintiff neither possessed nor dropped a bag of cocaine when the officers arrested him on April 10, 2003. If Plaintiff's version of the events is true, Plaintiff did not possess any narcotics, and Defendants purposefully dropped a bag of cocaine outside the Pub in order to create the false impression that Plaintiff possessed an unlawful narcotic. On the other hand, if Defendants' version of the events is true, a bag of illegal narcotics fell out of Plaintiff's pockets, so there was no "search" for purpose of the Fourth Amendment. See United States v. Trimble, 986 F.2d 394, 398-99 (10th Cir. 1993) (finding that district court did not err in finding that defendant had abandoned vial of crack cocaine when he pulled it out of his pocket and tried to drop it); see also United States v. Martin, 386 F.2d 213, 215 (3d Cir. 1967) (finding defendant abandoned drugs by attempting to discard them). Moreover, if, as Officer Szeles testified, Defendants saw drugs fall out of Plaintiff's pockets, the officers had probable cause to arrest and search him. See Martin, 386 F.2d at 215 (finding police had probable cause to arrest and search defendant after he tried to abandon drugs in their presence). Ultimately, the jury must decide which story is most credible. Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) ("In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'") (quoting Anderson, 477 U.S. at 255).

Defendants' argument that "no fact-finder could reasonably conclude that Plaintiff's act of dropping cocaine from his pocket in front of an officer did not constitute probable cause to arrest Plaintiff" misses the point. (Defs.' Br. at 11). In support of that argument, Defendants

offer nothing more than self-serving statements supporting their assertion that Plaintiff dropped a bag of cocaine on April 10, 2003. In effect, Defendants simply petition the Court to believe their story and reject Plaintiff's story <u>on summary judgment</u>. However, as previously mentioned, "[i]n considering a motion for summary judgment, a district court <u>may not make credibility determinations or engage in any weighing of the evidence</u>; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino, 358 F.3d at 247 (quoting Anderson, 477 U.S. at 255) (emphasis added). Here, Defendants seek nothing more than a credibility determination. Accordingly, the Court will deny Defendants' motion for summary judgment on Plaintiff's Fourth Amendment false arrest claim.

### C. Plaintiff's False Imprisonment Claim

The Complaint alleges that Defendants are liable for "denial of due process in violation of the Fourteenth Amendment to the United States Constitution." (Compl. at 1). However, because the allegations in the Complaint center on Plaintiff's allegedly unlawful arrest and detention, and Plaintiff filed the motion for summary judgment pro se, the Court construes Plaintiff's Fourteenth Amendment claim as a claim under 42 U.S.C. § 1983 for false imprisonment. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (internal quotation marks omitted).

In order to state a claim for relief under § 1983, a plaintiff must allege: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir.

11

1994)). Here, there is no dispute that Officer Szeles acted under color of state law when he arrested Plaintiff. Therefore, the Court must determine whether, by arresting Plaintiff, Officer Szeles violated Plaintiff's rights under the Constitution or federal law.

"A false imprisonment claim under 42 U.S.C. § 1983 is based on the Fourteenth Amendment protection against deprivations of liberty without due process of law." Groman, 47 F.3d at 636. An arrestee has a § 1983 claim for false imprisonment for detention pursuant to an arrest "where the police lack probable cause to make an arrest." Id.; Palman v. Atl. Cnty., 53 F. Supp. 2d 743, 755 (D.N.J. 1999). The basis for a false imprisonment claim under § 1983 is the Fourth Amendment's protection against unreasonable seizures. Groman, 47 F.3d at 636; Barna v. City of Perth Amboy, 42 F.3d 809, 820 (3d Cir. 1994). If a court denies a defendant's motion for summary judgment on a false arrest claim, summary judgment is also inappropriate on a § 1983 false imprisonment claim because "[the jury] could also find that [the plaintiff] suffered a violation of his constitutional rights by virtue of his detention pursuant to that arrest." Groman, 47 F.3d at 636.

The Court finds that because a reasonable jury could conclude that Defendants arrested Plaintiff without probable cause, summary judgment is inappropriate on Plaintiff's false imprisonment claim under § 1983. Accordingly, Defendants' motion for summary judgment on Plaintiff's § 1983 claim is denied.[2]

---

[2] Defendants' argument that Plaintiff failed to allege that he was deprived of a property interest under color of state law without due process is unavailing. Because the Court construes Plaintiff's Fourteenth Amendment claim as a false imprisonment claim under § 1983, the Court need not determine whether Plaintiff alleged a property interest.
Moreover, the Court is baffled by Defendants failed attempt to argue that Plaintiff's Fourteenth Amendment due process claim fails because Plaintiff failed to allege a property interest. When Defendants asked Plaintiff "[w]hat due process are you claiming you were denied," during a deposition, Plaintiff responded "I was arrested without probable cause." (Defs. Br. Ex. E Williams Dep. 104:8-11). Plaintiff's unambiguous response makes clear that his claim is based upon his position that Officer Szeles arrested him without probable cause, not that Officer Szeles deprived him of a property interest. Thus, it is clear that Plaintiff seeks to pursue a Fourteenth Amendment claim based on the theory that Defendants arrested him without probable cause.

## D. Plaintiff's Eighth Amendment Claim

The Complaint alleges that Officer Szeles's actions constituted "cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution." (Compl. at 1). Defendants argue that summary judgment is appropriate on Plaintiff's Eighth Amendment claim because (1) "Plaintiff's vague complaint makes it difficult to determine which allegations constitute his claim of cruel and unusual punishment," and (2) "Plaintiff cannot prove an Eighth Amendment violation under § 1983 for an unlawful arrest, illegal search or malicious prosecution" because "the investigatory stop and arrest of Plaintiff was lawful." (Defs.' Br. at 13).

Where an Eighth Amendment excessive force claim "arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person." Graham v. Connor, 490 U.S. 386, 394 (1989) (quoting U.S. Const. amend. IV). In that context, the district court must determine "whether the officer's actions were objectively reasonable in light of the facts and circumstances confronting him." Smith v. Addy, 343 F. App'x 806, 808 (3d Cir. 2009). "The proper application of this inquiry 'requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers and others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" Id. (quoting Graham, 490 U.S. at 396). The district court may also consider other factors such as (1) the possibility that the suspect is violent, (2) the duration of the action, and (3) the possibility that the suspect may be armed. Id.

The Court finds that, based on the evidence, no reasonable jury could conclude that the

individual officers named in this litigation used excessive force to arrest Plaintiff. Officer Szeles had very little physical contact with Plaintiff from the time he confronted Plaintiff to discuss the informant's tip to the time of Plaintiff's arrest. When asked how the police officers escorted him out of the Pub, Plaintiff stated that neither officer touched him. (Defs.' Br. Ex. E Williams Dep. 90:1 – 91:9). Furthermore, regarding his arrest, Plaintiff stated that "Officer Steven Szeles . . . searched thee [sic] plaintiff himself and handcuffed thee [sic] plaintiff." (Pls.' Opp'n Br. at 5). Plaintiff offers no evidence that the officers hit, kicked, punched, beat or shoved him into a patrol car or otherwise manhandled him during the arrest and subsequent booking. At most, the evidence demonstrates that the officers ordered Plaintiff to leave the Pub in order to question him, and, after they allegedly discovered that he possessed an illegal narcotic, searched and handcuffed him. That evidence fails to create a material issue of fact on the issue of whether the officers used excessive force to arrest Plaintiff. Therefore, because there is no evidence that Defendants' subjected Plaintiff to any form of cruel or unusual punishment, Plaintiff's Eighth Amendment claim is dismissed.

### E. Plaintiff's Twenty-Sixth Amendment Claim

The Complaint alleges "racial discrimination in violation of the Twenty-Sixth Amendment to the United States Constitution." (Compl. at 1). The Twenty-Sixth Amendment of the U.S. Constitution states: "The right of citizens of the United States, who are eighteen years of age or older, to vote shall not be denied or abridged by the United States or by any State on account of age." U.S. Const. amend. XXVI. This is not a voting rights case. Plaintiff does not allege that Defendants denied him suffrage. Accordingly, Plaintiff's claim based on violation of the Twenty-Sixth Amendment is dismissed.

## F. Plaintiff's Claims Against Temple University, The Temple University Board of Directors, and The Temple University Police Department

Defendants argue that notwithstanding Plaintiff's claims against Officer Szeles and Officer Leacock, there is no evidence of any wrongdoing on the part of Temple University, Temple University Board of Trustees, and the Temple University Police Department. Plaintiff fails to refute Defendants' argument.

It is well-settled that Section 1983 does not create a cause of action against local government units and supervisors based solely on a theory of respondeat superior. See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690-91, 694 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); Natale v. Camden Cnty. Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003). "A defendant in a civil rights action must have personal involvement in the alleged wrongs[;] liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge or acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

To establish liability against a municipality under § 1983, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990) (emphasis added). In other words, a plaintiff must show that, through its deliberate conduct, the government entity was the moving force behind the plaintiff's injury. Monell, 436 U.S. at 689. A policy is made "when a 'decisionmaker possess[ing] final authority

to establish municipal policy with respect to the action' issues a final proclamation, policy or edict." Kneipp v. Tedder, 95 F.3d 1199, 1212 (3d Cir. 1996) (citing Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996) (quoting Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990)). A custom is an act "that has not been formally approved by an appropriate decisionmaker," but that is "so widespread as to have the force of law." Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 404 (1997).

There are three situations where a district court may find that the acts of a government employee are the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983: (1) where "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy"; (2) where "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself"; and (3) where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need." Natale, 318 F.3d at 584 (internal quotation marks and citations omitted).

Here, Plaintiff fails to allege, and there is no evidence of, any deliberate conduct on the part of Temple University, Temple University Board of Trustees, or the Temple University Police Department. There is no evidence that a high-level employee in the Temple University Police Department promulgated any official policy relevant to this lawsuit. Furthermore, there is no evidence that a policymaker violated any federal law. Finally, there is no evidence that an official from Temple University failed to take action to remedy an obvious violation of federal

law or the United States Constitution.

The only evidence that may support a § 1983 claim against the Temple Defendants is Plaintiff's testimony that Temple University employed the individual officers named in this lawsuit, and that the Temple University Board of Trustees is associated with the Temple University Police Department. (Defs.' Br. Ex. E. Williams Dep. 120:23 – 121:11). However, a plaintiff cannot show that a state entity is liable under § 1983 by simply demonstrating that it hired an employee who violated the plaintiff's constitutional rights. Instead, as the Supreme Court held in Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,

> [a] plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision. Only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute "deliberate indifference."

520 U.S. at 411. Plaintiff points to no evidence that any of the individual officers named in this lawsuit had any background characteristics that made them more prone to arresting Plaintiff without probable cause, or otherwise violating Plaintiff's federal or constitutional rights. Thus, Plaintiff cannot succeed on a § 1983 claim for inadequate screening.

Therefore, because Plaintiff fails to identify a triable issue of fact on his claims against Temple University, Temple University Board of Trustees, and the Temple University Police Department, the Court dismisses all claims against those Defendants.

### G. Plaintiff's Claims Under Pennsylvania Law

Plaintiff also asserts the following state law claims: malicious prosecution, conduct unbecoming of a police officer, official oppression, harassment, disorderly conduct, obstruction

falsifying reports, and perjury.[4] Because those claims derive from Pennsylvania's criminal statutes, this Court has no subject matter jurisdiction over them. See Bey v. Pennsylvania, 345 F. App'x 731 (3d Cir. 2009) (affirming district court dismissal of plaintiff's state criminal claims for lack of subject matter jurisdiction).[5]

Therefore, because Plaintiff fails to establish each element of his state tort law claims and his contract claim, and this Court lacks the authority to adjudicate Plaintiff's criminal claims, the Court will grant Defendant summary judgment on all of Plaintiff's claims under Pennsylvania law.

## III. CONCLUSION

For the reasons discussed above, Defendants' motion for summary judgment is **DENIED** in part and **GRANTED** in part. The Court will deny Defendants' motion for summary judgment

---

[4] See 18 Pa. Cons. Stat. Ann. § 5301 (elements of crime of official oppression); 18 Pa. Cons. Stat. Ann. § 2710(a) (ethnic intimidation); 18 Pa. Cons. Stat. Ann. § 4906 (falsifying reports); 18 Pa. Cons. Stat. Ann. § 4902 (perjury); 18 Pa. Const. Stat. § 5503(a)(1)-(4) (disorderly conduct); Abdullah v. Fetrow, No. 05-1135, 2006 WL 1274994, at *8 (D.N.J. May 8, 2006) (noting that under Pennsylvania law, "there does not exist a [civil] cause of action for 'harassment.'"); Bennett v. Maier, No. 97-3555, 1998 WL 386129, at *4 (E.D. Pa. 1998) ("No civil cause of action for 'obstruction of justice' exists under either federal law or the law of the [Commonwealth] of Pennsylvania.").

[5] The Court also dismisses Plaintiff's abuse of power, "deliberate indifference," conduct unbecoming of an officer, and gross negligence claims. First, there is no cause of action for "abuse of power" or "deliberate indifference" under Pennsylvania law. Therefore, those claims are dismissed. Second, "gross negligence" is not a cause of action in Pennsylvania. Instead, "gross negligence" is a state of mind defined in 18 Pa. Cons. Stat. § 302(b)(3), coterminous with "recklessness." See Com v. Matroni, 923 A.2d 444, 457 (Pa. Super. Ct. 2007) ("[A] defendant acts recklessly if he 'consciously disregards' a risk, and that disregard must involve a gross deviation from the standard of conduct that a reasonable person would observe in the defendant's situation."); Commonwealth v. Huggins, 836 A.2d 862, 867-68 (Pa. 2003) ("[T]his Court has construed the terms "reckless" and "grossly negligent" as defining the equivalent state of mind for purposes of the involuntary manslaughter provision."). Moreover, even if the Court construes Plaintiff's "gross negligence" claim as a tort claim for negligence, summary judgment is appropriate because Plaintiff fails to establish the essential elements of an ordinary negligence claim under Pennsylvania law. See Merlini ex rel. Merlini v. Gallitzin Water Auth., 980 A.2d 502, 506 (Pa. 2009) (noting that the elements of a common law cause of action for negligence are: "the defendant owed a duty of care to the plaintiff, that duty was breached, the breach resulted in the plaintiff's injury, and the plaintiff suffered an actual loss or damages."). Third, the Police Tenure Act, 53 Pa. Cons. Stat. § 812(4), does not provide a private cause of action by a citizen against a police officer for conduct unbecoming of an officer. Pursuant to § 812(4), a municipality may dismiss a police officer for conduct unbecoming of an officer. "To demonstrate 'conduct unbecoming' of a police officer, it must be shown that his conduct adversely affected the morale or efficiency of the police force or tended to destroy public respect for municipal employees and confidence in the operation of municipal services." Kazmarek v. New Bethlehem Borough Council, 478 A.2d 514, 517 (Pa. Commw. Ct. 1984). Because § 812(4) does not create a cause of action by a private citizen against a police officer, Plaintiff's conduct unbecoming of an officer claim is dismissed.

on Plaintiff's Fourth Amendment false arrest and false imprisonment claims. The Court will grant Defendants' motion for summary judgment as to: (1) Plaintiff's Eighth Amendment and Twenty-Sixth Amendment claims; (2) Plaintiff's claims against the Temple Defendants; and (3) Plaintiff's claims under Pennsylvania tort and criminal law. Finally, to the extent that Plaintiff's "illegal search and seizure in violation of the Fourth Amendment to the United States Constitution," (Compl. at 1), claim is based upon the theory that Officer Szeles's investigatory stop was unlawful, Defendants are entitled to summary judgment on Plaintiff's "illegal search and seizure" claim. An appropriate order shall issue today.

Date: 6/20/2011

/s/ Robert B. Kugler
ROBERT B. KUGLER
United States District Judge